Case 1:17-cv-00032 Document 19 Filed on 06/21/17 in TXSD Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
June 21, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| **JOSE RAUL LARA-ORTIZ,** § | |
| Petitioner, § | |
| § | |
| v. § | Civil Action No. 1:17-32 |
| § | Criminal No. B:15-166-1 |
| **UNITED STATES OF AMERICA,** § | |
| Respondent. § | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

On February 9, 2017, Petitioner Jose Raul Lara-Ortiz filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. Dkt. No. 1. On May 1, 2017, the Government filed a motion to dismiss the petition. Dkt. No. 18.

After reviewing the record and the relevant case law, it is recommended that Lara-Ortiz's petition be denied. Lara-Ortiz's claims are belied by the record and do not otherwise merit relief.

**I. Background**

    **A. Factual Background**

On March 10, 2015, a federal grand jury – sitting in Brownsville, Texas, – indicted Lara-Ortiz in a four-count indictment. U.S. v. Lara-Ortiz, Criminal No. 1:15-166-1, Dkt. No. 9 (hereinafter "CR"). Lara-Ortiz was indicted for: (1) conspiracy to possess with intent to distribute more than 500 grams of cocaine; (2) possession with intent to distribute more than 500 grams of cocaine; (3) conspiracy to import more than 500 grams of cocaine into the United States; and (4) importing more than 500 grams of cocaine into the United States, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, 952(a) & 960(b)(2). Id.

    **B. Rearraignment**

On April 28, 2015, Lara-Ortiz appeared before the District Judge and entered a guilty plea – pursuant to a written plea agreement – to count two in the indictment, which charged him with possession with intent to distribute more than 500 grams of cocaine. CR Dkt. No. 16.

1

Lara-Ortiz's written plea agreement indicates that he knowingly and voluntarily waived his appellate rights. CR Dkt. No. 16, ¶ 11

Paragraph 11 of the plea agreement provides:

> Defendant is aware that Title 18, United States Code, § 3742, affords a defendant the right to appeal the conviction and sentence imposed. The defendant knowingly and voluntarily waives the right to appeal the conviction and the sentence imposed or the manner in which the sentence was determined. Additionally, the defendant is aware that Title 28, United States Code, § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant knowingly and voluntarily waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding. If the defendant files a notice of appeal following the imposition of sentence, the government will seek specific performance of this provision. Nothing in the foregoing waiver of appellate and collateral review of rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

CR Dkt. No. 16, ¶ 11 (emphasis original).

During the plea colloquy, the District Judge established that Lara-Ortiz understood he was waiving his appellate rights. CR Dkt. No. 69.

> [THE COURT]: In paragraph 11 of those agreements, you've agreed to waive or give up the right to appeal the conviction and the sentence imposed or the manner on which it was determined. And you've also agreed to waive or give up the right to attack the conviction after it becomes final by any means, including those under Title 28, United States Code, Section 2255. So, . . . Mr. Lara [do you] understand you're giving up these appellate rights in the agreement you have with the government?
> [Lara-Ortiz]: Yes, sir.

CR Dkt. No. 43, pp. 17-18.

The Court established that Lara-Ortiz had never needed treatment for any kind of substance abuse; was not under the influence of any medications or drugs; had discussed the charges with his attorney; was able to assist in his own defense; and was satisfied with his attorney's representation. CR Dkt. No. 43, pp. 6-46. Lara-Ortiz informed the Court that he had not been forced to plead guilty and acknowledged that the plea agreement had been

2

explained to him. Id. The Court further informed Lara-Ortiz that the Court did not have to follow any recommendation within the plea agreement; and that the Court could sentence Lara-Ortiz to something more than Lara-Ortiz might anticipate. Id. Lara-Ortiz stated that he had been informed of the maximum sentence that he faced; and the impact of the sentencing guidelines in his case. Id. The Court further explained that as a result of pleading guilty, Lara-Ortiz gave up: the right to confront and cross-examine adverse witnesses; the right to call witnesses on his own behalf; the right to subpoena witnesses to make them testify; and gave up his right to choose whether he would testify. Id. Lara-Ortiz confirmed that he understood the implications of giving up his right to trial as a result of pleading guilty. Id. Having stated that he understood all of his rights, Lara-Ortiz entered a plea of guilty to the charge of possession with intent to distribute more than 500 grams of cocaine. Id.

### C. Sentencing & Direct Appeal

In the final presentence report ("PSR"), Lara-Ortiz was assessed a base offense level of 24. CR Dkt. No. 20, pp. 5-6. This level was predicated upon on a relevant conduct finding that Lara-Ortiz was responsible for 1.979 kilograms of cocaine. Id. Lara-Ortiz received a three-level reduction for acceptance of responsibility. Id. Thus, Lara-Ortiz was assessed a total offense level of 21.

Regarding his criminal history, Lara-Ortiz had no adult criminal convictions and was assessed zero criminal history points, resulting in a criminal history category of I. CR Dkt. No. 20, pp. 6-7. Based upon Lara-Ortiz's offense level of 21 and criminal history category of I, the presentence report identified a guideline sentencing range of 37 to 46 months of imprisonment. Id., p. 10. However, Lara-Ortiz's conviction carried a statutory mandatory minimum sentence of 60 months. Id. Accordingly, 60 months became his guideline sentence.

The PSR noted that if Lara-Ortiz qualified for safety valve under U.S.S.G. § 5C1.2, there would no longer be a mandatory minimum and Lara-Ortiz would also receive a two-level reduction in his base offense level. Id. Thus, his revised base offense level would be 19 and would result in a guideline sentencing range of 30 to 37 months.

At sentencing, the parties disagreed about whether Lara-Ortiz qualified for the safety valve under U.S.S.G. § 5C1.2, specifically whether Lara-Ortiz "truthfully provided to the

3

Government all information and evidence the defendant has concerning the offense." U.S.S.G. § 5C1.2(a)(5).

At sentencing, Homeland Security Investigations Special Agent Isis Sanchez testified about her attempts to "debrief" Lara-Ortiz. CR Dkt. No. 44, pp. 6-7. Sanchez testified that one of her "primary goals" in the interviews was to have Lara-Ortiz identify someone who was listed in his phone as "Pepe." Id. Sanchez believed that "Pepe" was the person to whom Lara-Ortiz was delivering the drugs. Id.

Sanchez discovered – apparently through other, independent, means – that "Pepe" was a man named Luis Felipe Cardenas. CR Dkt. No. 44, pp. 8-9. On two separate occasions, Sanchez placed a photo lineup – which included a picture of Cardenas – before Lara-Ortiz and asked him to identify "Pepe." Id. Lara-Ortiz never identified him.

During the pendency of the case, Cardenas was arrested and interviewed by Sanchez. CR Dkt. No. 44, pp. 8-12. Cardenas immediately identified Lara-Ortiz from a photo lineup as the man who delivered the drugs to him. Id. The Court asked Sanchez, "so what you're saying is that Mr. Lara-Ortiz did not identify the individual known as 'Pepe,' but when Pepe was questioned, he easily identified Mr. Lara-Ortiz?" Id. Sanchez replied, "correct." Id. The prosecutor later asked Sanchez if there was "any reason in [her] mind that [Lara-Ortiz] should not have been able to ID [Cardenas] from the photographs you provided?" Id, p. 15. Sanchez replied, "No." Id.

The Court ruled that it was "not granting safety valve as Defendant has not complied with Section 5C1.2(a)(5) that he truthfully provide the Government with all information." CR Dkt. No. 44, p. 20. When asked for a sentencing recommendation, the prosecutor stated that "[t]he Government has agreed to recommend that 37 months as part of the Plea Agreement, though the statutory minimum is going to intervene and prevent[] that." Id, p. 17.

The District Judge sentenced Lara-Ortiz to 60 months of imprisonment; four years of supervised release; and a $100 special assessment fee, which was ordered remitted. CR Dkt. No. 29. The judgment was entered on February 19, 2016. Id.

Neither the District Court docket, nor the Fifth Circuit docket, reflect the filing of a direct appeal. A notice of appeal must be filed within fourteen (14) days from the entry of judgment. See FED. R. APP. P. 4(b)(1)(A), 26(a)(2). Therefore, Lara-Ortiz's deadline for filing a notice of direct appeal passed on March 4, 2016. Id.

### D. Motion to Vacate, Set Aside or Correct Sentence Pursuant to § 2255

On February 9, 2017, Lara-Ortiz timely filed a petition pursuant to 28 U.S.C. § 2255. Dkt. No. 1. In that petition, Lara-Ortiz raises three issues, which the Court restates as follows: (1) the Government breached the plea agreement by not agreeing to a sentence reduction based on substantial assistance[1]; (2) his counsel did not discuss with him his right to appeal; (3) he did not qualify for a mandatory minimum.

On March 2, 2017, the Government filed a motion to have Lara-Ortiz's trial attorney file an affidavit, responding to Lara-Ortiz's claims. Dkt. No. 9. On March 3, 2017, the Court granted the motion. Dkt. No. 10.

On April 5, 2017, Lara-Ortiz's trial counsel filed the affidavit. Dkt. No. 15. In the affidavit, Lara-Ortiz's counsel stated that he had advised his client that he had waived the right to appeal. Id. Counsel further set forth that Lara-Ortiz "never stated to me that he wanted to appeal or even questioned what procedures needed to be implemented to appeal." Id.

On May 1, 2017, the Government filed a response to the petition, arguing that all of Lara-Ortiz's claims were meritless. Dkt. No. 18. The Court notes that the Government did not seek to enforce the plea agreement as to the first two claims of prosecutorial misconduct and ineffective assistance, but did seek to enforce it as to the third claim, regarding the mandatory minimum. Id.

Lara-Ortiz did not filed a reply brief.

---

[1] Lara-Ortiz does not specify what form he believed this sentence reduction should take – safety valve under § 5C1.1 or reduction for substantial assistance under § 5K1.1 – so the Court will analyze the claim under both clauses. As discussed later, Lara-Ortiz's claim fails under either choice.

**II. Applicable Law**

    **A. Section 2255**

Lara-Ortiz seeks relief pursuant to 28 U.S.C. § 2255. Dkt. No. 1. That section provides, as relevant here:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

"Section 2255 provides the primary means of collaterally attacking a federal sentence, and is the appropriate remedy for errors that occurred at or prior to the sentencing." Logan v. Warden Fed. Corr. Complex Beaumont, 644 F. App'x 280 (5th Cir. 2016) (quoting Padilla v. U.S., 416 F.3d 424, 425 (5th Cir. 2005)). A petitioner who seeks to challenge a final conviction by collateral attack, can do so on constitutional or jurisdictional grounds. 28 U.S.C. § 2255(a); U.S. v. Shaid, 937 F.2d 228, 233 (5th Cir. 1991).

    **B. Ineffective Assistance of Counsel**

An ineffective assistance of counsel claim brought under § 2255 is subject to the two-prong analysis articulated in Strickland v. Washington, 466 U.S. 668 (1984). U.S. v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004). To establish ineffective assistance, the petitioner must show: (1) that defense counsel's performance was deficient; and, (2) that the deficient performance prejudiced the defendant. Id. To prove that counsel's performance was deficient, a petitioner must show that "it fell below an objective standard of reasonableness." U.S. v. Juarez, 672 F.3d 381, 385 (5th Cir. 2012). Courts will not "audit decisions that are within the bounds of professional prudence." U.S. v. Molina-Uribe, 429 F.3d 514, 518 (5th Cir. 2005).

Prejudice is established by proving "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland,

6

466 U.S. at 694. "Failure to prove either prong will defeat an ineffective assistance claim." Leal v. Dretke, 428 F.3d 543, 548 (5th Cir. 2005).

A defendant is "entitled to effective assistance of counsel at all stages of his criminal trial, including the sentencing phase." Ransom v. Johnson, 126 F.3d 716, 721 (5th Cir. 1997). A defendant may show prejudice at sentencing if counsel's ineffective assistance resulted in any additional incarceration. Glover v. U.S., 531 U.S. 198, 203 (2001) (noting that "any amount of jail time has Sixth Amendment significance.").

## III. Analysis

A court may entertain and decide a § 2255 motion without requiring the production of the prisoner at a hearing. 28 U.S.C. § 2255. Further, a district court may deny a § 2255 motion without an evidentiary hearing "only if the motion, files, and records of the case conclusively show the prisoner is entitled to no relief." U.S. v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992). The record in this case satisfies this requirement, for which reason the motion can be decided without a hearing.

In analyzing Lara-Ortiz's claim, the Court is required to construe allegations by pro se litigants liberally, to ensure that their claims are given fair and meaningful consideration, despite their unfamiliarity with the law. Haines v. Kerner, 404 U.S. 519, 520 (1972). While the Court will "read pro se complaints liberally, pro se litigants must still comply with the law and procedural rules." Washington v. E. Baton Rouge Par. Sch. Sys., 471 F. App'x 306 (5th Cir. 2012). Regardless of the standard applied in this case, neither the record – nor the law – support Lara-Ortiz's claim.

### A. Breach of Agreement

Lara-Ortiz argues that the Government breached the plea agreement by not agreeing to a reduction in his sentence. It appears that he is arguing that the Government breached the agreement by not agreeing to a "safety valve" in this case. This claim is meritless.

Under § 5C1.2 of the Sentencing Guidelines, the Court is not required to impose the statutory mandatory minimum sentence for certain drug-related crimes if the defendant meets specific criteria. Those five criteria are that: (1) the defendant does not receive more than

7

1 criminal history point; (2) the defendant did not use "violence or credible threats of violence or possess a firearm or other dangerous weapon" in connection with the offense; (3) the offense did not result in death or serious bodily injury to another; (4) "the defendant was not an organizer, leader, manager, or supervisor of others in the offense;" and, (5) "the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." U.S.S.G. § 5C1.2(a). This benefit is known, colloquially, as the "safety valve."

In the plea agreement, the Government made no promises regarding the application of the safety valve to this case. CR Dkt. No. 16. Instead, the Government promised to "recommend the Defendant be given the full credit for acceptance of responsibility; be sentenced to the bottom of the advisory Guideline level he scores and move to dismiss the remaining counts at the time of sentencing." Id.

In a case with nearly identical plea agreement language, the Fifth Circuit held that the Government did not breach its promise to recommend the lowest sentence in the guideline sentencing range when it opposed the application of safety valve. U.S. v. Aguayo-Paramo, 48 F. App'x 105 (5th Cir. 2002). "To the extent that the Government opposed the safety valve adjustment, it did not breach the plea agreement because the Government's arguments addressed the applicable guideline range, not [the Defendant's] sentence within it." Id. Thus, the Government merely promised to recommend that Lara-Ortiz be given the lowest sentence within the appropriate sentencing range; the Government was free to argue what constituted the appropriate sentencing range. Id.

Furthermore, Lara-Ortiz cannot maintain a claim that the Government breached the plea agreement when the prosecutor stated that "[t]he Government has agreed to recommend that 37 months as part of the Plea Agreement, though the statutory minimum is going to intervene and prevent[] that." CR Dkt. No. 44, p. 17. The Fifth Circuit has also concluded that, when a defendant faces a statutory mandatory minimum sentence, the Government's failure to recommend a sentence below that mandatory sentence does not breach the plea

agreement's promise for a recommendation at the bottom of the guideline sentencing range. The Fifth Circuit reasoned that the Government's conduct "could not have affected the length of [the Defendant's] sentence because the district court could not have sentenced him to less than the statutorily mandated" minimum sentence. U.S. v. Cerverizzo, 74 F.3d 629, 633 (5th Cir. 1996); Aguayo-Paramo, 48 Fed. App'x. 105. Thus, this claim is foreclosed and is meritless.

To whatever extent Lara-Ortiz asserts that the Government was required to file a motion for a reduction in sentence based on substantial assistance under § 5K1.1, his claim is meritless. Section "5K1.1 does not require the government to move for a downward departure if the defendant provides substantial assistance, but rather grants the government discretionary power to make such a motion." U.S. v. Garcia-Bonilla, 11 F.3d 45, 46 (5th Cir. 1993). The only exceptions to this discretionary power are when: (1) the Government promises in a plea agreement to file such a motion; or (2) the Government refuses to file a motion based on an unconstitutional motive. U.S. v. Underwood, 61 F.3d 306, 312 (5th Cir. 1995). The plea agreement is silent on the issue of a 5K1.1 motion and Lara-Ortiz has not established any unconstitutional motivation by the Government. Thus, the decision about whether Lara-Ortiz qualified for a 5K1.1 reduction was within the Government's discretion. This claim is meritless and should be dismissed.

## B. Appellate Rights

Lara-Ortiz asserts that his lawyer was ineffective for failing to discuss an appeal with him.[2] In determining whether there was deficient performance, the Court must consider whether Lara-Ortiz reasonably demonstrated to his lawyer that he wished to appeal or whether a rational defendant in Lara-Ortiz's situation would have wanted to appeal. Lara-Ortiz must meet one of these two standards in order to establish deficient performance; he has not established either one.

---

[2] The Court notes that the instant case is not one where, after being directed by a client to file an appeal, counsel failed to file a timely appeal. In those cases, prejudice is presumed and the remedy is an out-of-time appeal. U.S. v. Tapp, 491 F.3d 263, 266 (5th Cir. 2007).

A defense attorney "has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think" either (1) "that this particular defendant reasonably demonstrated to counsel that he was interested in appealing" or (2) "that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal)." U.S. v. Cong Van Pham, 722 F.3d 320, 324 (5th Cir. 2013) (quoting Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000)).

In order to establish prejudice for counsel's failure to consult, the particular defendant must show by a preponderance of the evidence that, but for counsel's failure, he would have timely filed a notice of appeal. Id. In cases where the defendant reasonably demonstrated to his attorney that he, individually, was interested in appealing (a subjective standard), the defendant does not need to show that the appeal would have been meritorious. Id. This prejudice test applies even when the defendant waived the right to appeal. Id. On the other hand, in considering whether a rational defendant (an objective standard) would want to appeal, the absence of a non-frivolous issue may be considered. Flores-Ortega, 528 U.S. at 480.

In determining whether Lara-Ortiz reasonably demonstrated that he was interested in appealing, the Court is mindful that there are no magical incantations that a defendant must use to demonstrate an interest in appealing. Cong Van Pham, 722 F.3d at 325. "Just as it is part of counsel's duty to recognize when a rational defendant would want to appeal, so too is it part of his duty to recognize when, however inartfully or inarticulately, his client demonstrates an interest in an appeal." Id.

In this case, there is no evidence in the record that Lara-Ortiz ever demonstrated a dissatisfaction with his sentence to his counsel. Lara-Ortiz states that after his sentencing hearing, he "wrote one letter and ask[ed] my family to contact the attorney. I wanted my sentence, the amount of months be revised. I had no response." Dkt. No. 1, p. 5. Thus, Lara-Ortiz asked his family to contact the attorney, but there is no indication in the record that they ever did so. Counsel stated in the affidavit that Lara-Ortiz "never wrote to me seeking assistance in appealing the sentence." Dkt. No. 15. The Court must analyze this issue based

10

on the information that counsel knew or should have known at the time. Cong Van Pham, 722 F.3d at 324. There simply is no evidence in the record that Lara-Ortiz's counsel was made aware that Lara-Ortiz wished to appeal.

Furthermore, Lara-Ortiz's claim that he was "shocked" after sentencing is not enough to demonstrate an interest in appealing. "[C]ounsel had no duty to consult when the defendant 'was upset about sentencing matters before and after the sentencing hearing, [but] did not express to counsel any interest in appealing the sentence' in subsequent conversations." Cong Van Pham, 722 F.3d at 325 (quoting U.S. v. Casarez, 304 Fed. App'x. 325, 325 (5th Cir. 2008)). Thus, there is no evidence in the record that would have led counsel to believe that Lara-Ortiz was interested in appealing.

Accordingly, the Court turns to the question of whether a rational defendant in Lara-Ortiz's situation would want to appeal. Neither the Supreme Court, nor the Fifth Circuit Court of Appeals, have ever expressly set out the standard to apply in considering what a hypothetical rational defendant would want to do. The Supreme Court has, however, noted that a rational defendant would want to appeal if there are "non-frivolous grounds" for appeal. Flores-Ortega, 528 U.S. at 480. Other factors to consider are: whether the defendant pled guilty; received a sentence that was bargained for in the plea agreement; and whether the defendant waived some or all of his appellate rights. U.S. v. Cooper, 617 F.3d 307, 313 (4th Cir. 2010) (citing Flores-Ortega, 528 U.S. at 480).

Viewed in this light, a rational defendant in Lara-Ortiz's situation would not wish to appeal. Lara-Ortiz pled guilty and waived his right to file his appeal, which indicates that he sought to end the judicial proceedings. Flores-Ortega, 528 U.S. at 480. As part of his guilty plea, he waived all of his appellate rights, except for ineffective assistance of counsel, which normally cannot be raised on direct appeal. U.S. v. Munoz Flores, 324 F. App'x 389, 389 (5th Cir. 2009).

Furthermore, there were no non-frivolous issues to be raised on appeal. Lara-Ortiz was denied the safety valve because he failed to provide "to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same

11

course of conduct or of a common scheme or plan." U.S.S.G. § 5C1.2(a)(5) (emphasis added).  Lara-Ortiz had the burden of proving at sentencing that he "truthfully provided the government with all relevant information." U.S. v. Durfey, 550 F. App'x 193 (5th Cir. 2013) (unpubl.).  The Government provided un-rebutted testimony that Lara-Ortiz failed to identify the person to whom he was delivering the drugs.  The willful failure to identify other people who were involved in the commission of the offense disqualifies a defendant from receiving the safety valve. Id. (upholding denial of safety valve where defendant failed to identify the supplier of drugs he was convicted of transporting).  Given the un-rebutted evidence of his failure to identify "Pepe," the denial of safety valve did not present a non-frivolous issue for appeal.

Because the Court correctly denied the application of safety valve, Lara-Ortiz was sentenced to the mandatory minimum sentence of 60 months.  Lara-Ortiz was informed at his rearraignment that his conviction carried the mandatory minimum sentence of 60 months, which he said that he understood. CR Dkt. No. 43, p. 9.  A rational defendant would not have been surprised by a 60 month sentence under the circumstances presented.

Furthermore, Lara-Ortiz has not identified any errors in sentencing – nor has the Court found any – which presented non-frivolous issues for appeal.  Thus, a rational defendant in Lara-Ortiz's situation would not have chosen to appeal.

Given that Lara-Ortiz never communicated his desire to appeal to his counsel and a rational defendant in Lara-Ortiz's situation would not have wanted to appeal, counsel was not deficient for failing to consult with Lara-Ortiz concerning an appeal.  This claim should be denied.[3]

---

[3] The Court notes that, had Lara-Ortiz reasonably demonstrated to his counsel that he wanted to file an appeal, he might have been able to show the necessary prejudice.  He is merely required to show that there is a reasonable probability that he would have timely appealed if counsel had consulted him, regardless of the merit of any potential appeal. Cong Van Pham, 722 F.3d at 324.  Actions which demonstrate a defendant's "interest in doing something to change the outcome of his sentencing through additional proceedings" are probative of whether he would have filed the appeal. Id at 325.  In this case, Lara-Ortiz filed a motion for a reduction in sentence within three months of the judgment being entered and repeatedly sought copies of court documents. CR Dkt. Nos. 31, 32,

### C. Mandatory Minimum

Lara-Ortiz asserts that he did not possess a sufficient quantity of drugs to qualify for the mandatory minimum. This claim is meritless.

As an initial matter, this claim is barred by the waiver of appellate rights found in the plea agreement. "A defendant may waive his statutory right to appeal as part of a valid plea agreement, provided (1) his or her waiver is knowing and voluntary, and (2) the waiver applies to the circumstances at hand, based on the plain language of the agreement." U.S. v. Rodriguez-Estrada, 741 F.3d 648, 650 (5th Cir. 2014). In order for the waiver to be knowing and voluntary, "a defendant must know that he had a right to appeal his sentence, and that he was giving up that right." U.S. v. Portillo, 18 F.3d 290, 292 (5th Cir. 1994).

The record clearly establishes that Lara-Ortiz understood that he was waiving his right to appeal. CR Dkt. No. 43, pp. 17-18. Furthermore, this claim is expressly covered by the waiver. CR Dkt. No. 16, ¶ 11. Even if Lara-Ortiz did not waive this claim, it is clearly meritless.

Under federal law, a person convicted of possessing "500 grams or more" of cocaine faces a mandatory minimum sentence of five years of imprisonment. 21 U.S.C. § 841(b)(1)(B)(ii)(II). Lara-Ortiz was indicted for possessing with the intent to distribute more than 500 grams of cocaine. CR Dkt. No. 9. At his re-arraignment, he admitted to possessing 1.9 kilograms of cocaine. CR Dkt. No. 43, pp. 19-20. Thus, his actions qualified him for the mandatory minimum.

---

37, 38. Other courts have found these type of actions to be a sufficient demonstration that the defendant would have timely appealed if counsel had consulted him. Esquivel v. U.S., No. 3:15-CV-553-D-BN, 2016 WL 6902150, at *8 (N.D. Tex. Oct. 3, 2016), report and recommendation adopted, No. 3:15-CV-0553-D, 2016 WL 6902183 (N.D. Tex. Nov. 21, 2016). Such a result would merely have allowed Lara-Ortiz to file an out of time appeal. That filing, however, would not vitiate the waiver of appellate rights in the plea agreement; nor add any merit to his plainly meritless claims.

### IV. Recommendation

WHEREFORE it is **RECOMMENDED** that the Petitioner Jose Raul Lara-Ortiz's Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255, Dkt. No. 1, be **DENIED** as meritless.

### A. Certificate of Appealability

Unless a circuit justice or judge issues a Certificate of Appealability ("COA"), a petitioner may not appeal the denial of a § 2255 motion to the Fifth Circuit. 28 U.S.C. § 2253(a),(c)(1). A petitioner may receive a COA only if he makes a "substantial showing of the denial of a constitutional right." § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To satisfy this standard, a petitioner must demonstrate that jurists of reason could disagree with the court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. Id. at 327; Moreno v. Dretke, 450 F.3d 158, 163 (5th Cir. 2006). A district court may sua sponte rule on a COA because the court that denies relief to a petitioner is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000).

After reviewing Lara-Ortiz's § 2255 motion and the applicable Fifth Circuit precedent, the Court recommends that a Certificate of Appealability be issued to allow the Circuit Court to determine what factors should be considered in deciding whether a so-called "rational defendant" would want to appeal and whether Lara-Ortiz qualifies as such. The caselaw on this point is sparse and the issue presented merits encouragement to proceed further.

As to all other claims, the certificate of appealability should be denied.

### B. Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge. 28 U.S.C. § 636(b)(1) (eff. Dec.

14

1, 2009).  Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court, except upon grounds of plain error or manifest injustice. See § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

      DONE at Brownsville, Texas, on June 21, 2017.

                                                      Ronald G. Morgan
                                                      United States Magistrate Judge